UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re*:

JENNIFER M. NORDGAARD,

Case Number: 23-10491-7

Debtor.

## MEMORANDUM DECISION ON DEBTOR'S MOTION TO PAY AND TRUSTEE'S OBJECTION TO EXEMPTIONS

Debtor Jennifer Nordgaard moved to pay herself proceeds from a divorce settlement and to claim the proceeds as exempt. The Chapter 7 Trustee objected to her motion. He also filed a separate objection to her claim that the proceeds were exempt.

### FACTS

The facts are not in dispute. Adam Nordgaard and the Debtor were married and co-owned a 40-acre farm. In October 2021, Debtor filed for divorce. Debtor did not want to keep the farm and Adam did. The divorce court awarded Adam all rights, title, and interest in the farm. But the award was based on the condition that Adam refinance and release Debtor from all liability on the mortgage. Adam was ordered to refinance and completely release Debtor from all responsibility on the mortgage within 60 days of the date of the divorce decree. The court added that any party who suffered a loss due to the failure of the other to refinance or release them from liability could enforce the court's order by motion or order to show cause for contempt of court.

After refinancing the mortgage, Adam was required to make two $70,664.82 "equalization payments" to Debtor for her interest in the marital property, including the farm's equity. The first payment was due by December 1, 2022, and the second payment by December 1, 2023. The divorce decree specified that if the first payment wasn't made by December 1, 2022, then the entire outstanding amount would be immediately due and a judgment would be entered against Adam for the entire remaining balance.

Adam failed to make the first payment. He made two partial payments— $15,000 on December 1, 2022, and $7,000 in February 2023.

Debtor filed bankruptcy on March 31, 2023. At that time she continued to hold title to the farm. The divorce court found Adam in contempt in April and ordered that the full outstanding equalization amount of $122,105 be paid to Debtor by May 31. On May 22, Debtor signed a quitclaim deed to the real estate[1] in exchange for $122,105. The payment was placed in trust at White & Schilling, LLP.

The Trustee stipulated with the Debtor that the Debtor could use $5,000 of the funds held for moving expenses, rent, and security deposit costs for a replacement rental.

On her Schedule C, Debtor listed two equalization payments. She claimed both as exempt. One payment, for $73,429.63, is listed as a "[d]ivorce equalization payment yet to be received to replace retirement fund" and exempt under Wis. Stat. § 815.18(3)(j). The second payment, for $75,000, is listed as a

---

[1] ECF No. 24, p. 24 (Quit Claim Deed).

"divorce equalization payment received to be used for homestead," and exempt under Wis. Stat. § 815.20.

Once payment was made and a deed exchanged, Debtor moved to have the funds released from the trust account under the homestead exemption and retirement exemption. The Chapter 7 Trustee, Attorney Block, objected to her motion and filed a separate objection to the exemption claims.

### DISCUSSION

I.  <u>Standard</u>

Debtor claimed Wisconsin exemptions. "[W]hen a debtor claims a state-created exemption, the exemption's scope is determined by state law." *Law v. Siegel*, 571 U.S. 415, 425 (2014). Whether a debtor is entitled to an exemption is determined by looking at the debtor's property on the petition date. *In re Willis*, 495 B.R. 856, 860 (Bankr. W.D. Wis. 2013). Federal Rule of Bankruptcy Procedure 4003(c) provides that the objecting party has the burden of proving that the exemptions are not properly claimed.

II.  <u>Homestead Exemption Under Wis. Stat. § 815.20</u>

Under 11 U.S.C. § 522(b)(2), a debtor may choose between state and federal exemptions. Debtor chose state exemptions. She argues that she is entitled to a $75,000 homestead exemption under Wis. Stat. § 815.20. Even though the divorce court awarded Mr. Nordgaard full rights, title, and interest in the property, Debtor didn't transfer her interest in the property until she received the full equalization payment for her equity in May 2023. Debtor states that her intent was to put the equalization payment toward a new house.

Citing *Vande Zande v. Vande Zande (In re Vande Zande)*, 22 B.R. 328 (Bankr. W.D. Wis. 1982), Debtor argues that although the divorce decree labels the payment as an "equalization payment," this Court is not bound by that label and can rule the funds are instead exempt homestead proceeds.

In response, the Trustee argues that the Court should disallow the homestead exemption because, on the petition date, Debtor simply owned a right to receive an equalization payment. Trustee Block argues that Wis. Stat. §§ 815.20 and 990.01(14) do not exempt the equalization payment because the entire former homestead was awarded to the ex-spouse, and the equalization payment is not proceeds from the sale of the homestead.

Article I, § 17, of the Wisconsin Constitution requires that the privilege of all debtors to enjoy the necessary comforts of life be recognized by laws exempting a reasonable amount of property from sale for the payment of debts. Considering that constitutional guarantee, courts have long recognized that the homestead exemption is given a liberal construction in favor of the debtor. *See, e.g.*, *Moore v. Krueger*, 179 Wis. 2d 449, 456–58, 507 N.W.2d 155 (Wis. Ct. App. 1993); *Schwanz v. Teper*, 66 Wis. 2d 157, 163, 223 N.W.2d 896 (1974); *Scofield v. Hopkins*, 61 Wis. 370, 374, 21 N.W. 259 (1884).

Wisconsin's homestead exemption statute provides:

An exempt homestead as defined in s. 990.01(14)[2] selected by a resident owner and occupied by him or her shall be exempt from

---

[2] Wis. Stat. § 990.01(14) defines "exempt homestead" as "the dwelling, including a building, condominium, mobile home, manufactured home, house trailer or cooperative or an unincorporated cooperative association, and so much of the land surrounding it as is reasonably necessary for its use as a home, but not less than 0.25

4

execution, from the lien of every judgment, and from liability for the debts of the owner to the amount of $75,000, except mortgages, laborers', mechanics', and purchase money liens and taxes and except as otherwise provided. The exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale of the homestead, but shall extend to the proceeds derived from the sale to an amount not exceeding $75,000, while held, with the intention to procure another homestead with the proceeds, for 2 years. The exemption extends to land owned by husband and wife jointly or in common or as marital property, and each spouse may claim a homestead exemption of not more than $75,000. The exemption extends to the interest therein of tenants in common, having a homestead thereon with the consent of the cotenants, and to any estate less than a fee.

Wis. Stat. § 815.20(1).

The statute carves out two distinct circumstances in which the homestead exemption is not impaired despite a lack of occupancy by the owner for some identified time period. The exceptions are: (1) a "temporary removal exception," which involves an owner's intentionally transient absence from the homestead; and (2) the owner's sale of the homestead with the intent to use the proceeds to obtain a new homestead. *See Anderson v. Anderson Tooling, Inc.*, 2021 WI App 39, ¶ 25, 398 Wis. 2d 595, 961 N.W.2d 911. Under the latter circumstance, a debtor may retain the exemption despite failing to occupy the homestead property on an indefinite basis so long as he or she intended, at the time occupancy of the property stopped, to sell it and to use the sales proceeds to buy a new homestead. *See id.* at ¶ 27. The statute does not require a debtor to occupy the homestead until the sale of the homestead is consummated to

---

acre, if available, and not exceeding 40 acres, within the limitation as to value under s. 815.20, except as to liens attaching or rights of devisees or heirs of persons dying before the effective date of any increase of that limitation as to value."

5

preserve the exemption in the proceeds from that sale. *Id.* In sum, "[t]he combined result of these two exceptions to the general occupancy requirement is that the 'exemption on [a] homestead is lost' when the debtor 'removed herself or himself from a homestead with no intent to [either] reoccupy or [to] sell the house and use the proceeds to procure another homestead.'" *Id.* at ¶ 28 (citing *Moore*, 179 Wis. 2d at 458).

"The two exceptions operate consistently with another homestead law principle, namely, 'the rule that a person can only have one homestead at a time.'" *Anderson*, 2021 WI App 39, ¶ 29 (citing *Moore*, 179 Wis. 2d at 458).

In *In re Lumb*, No. 81-C-1159, 1982 U.S. Dist. LEXIS 18628 (E.D. Wis. June 17, 1982), the district court liberally applied the exemption in upholding the bankruptcy court's order allowing a debtor to claim a homestead exemption in his former property. Mr. Lumb and his wife owned a house and got divorced. The divorce court awarded custody of the couple's children to Mrs. Lumb and ordered Mr. Lumb to leave the house. The court also ordered the Lumbs to refinance their mortgage on the homestead. In the event they couldn't refinance, the homestead was to be sold with the proceeds to be divided evenly between the parties.

Mr. Lumb then filed a voluntary Chapter 7 petition—before the Lumbs could refinance the mortgage. In the bankruptcy court, Mr. Lumb claimed a homestead exemption for the property. The trustee objected to the claimed exemption because Mr. Lumb was not a "resident owner," that the property was not "occupied" by him, and that his removal was not "temporary." The

6

trustee also argued that the principle of liberal construction of the homestead exemption cannot be used to extend the exemption to persons whom the statute was not intended to protect.

The court ruled for the debtor. The opinion weighed on the fact that Mr. Lumb was ordered to leave the property by the divorce court. But the court also noted that the homestead exemption was available to debtors that are "able to exercise a reasonable degree of volition in their place of residence [by proving] one or more concrete acts, and not merely through expressed intent, their intent to maintain certain property as a homestead, and also prove their present entitlement to reside on the claimed homestead property." *Lumb*, 1982 U.S. Dist. LEXIS 18628, at *6. S*ee also Sheldon v. Johnston,* 242 Wis. 442, 447–48, 8 N.W.2d 269 (Wis. 1943) (homestead exemption available if a debtor shows "some overt act indicating a then present intention to set aside the particular property as and for a homestead, in addition to a showing of a merely mental attitude to the same purpose").

This case is much like *Lumb*. A key difference, however, is that Debtor wasn't forced to leave her homestead like the debtor in *Lumb* because the parties stipulated to the property division. Yet Debtor proved her intent to maintain the property as a homestead and her entitlement to reside on the property: she didn't quitclaim her interest in the property to Mr. Nordgaard until he was ordered to pay the equalization payment in full. The transactional nature of the transfer of the homestead is sufficient to show that Debtor

intended to preserve her rights and interests in the homestead until Mr.

Nordgaard complied with the judgment of divorce.

Indeed, the Trustee is incorrect when he argues that, on the petition

date, Debtor only owned a right to receive an equalization payment, rather than

the real property. She continued to hold title to the real estate until she was

paid for her interest in the homestead.

On point is the *Vande Zande* decision. 22 B.R. 328 (Bankr. W.D. Wis.

1982). There, the dispute centered on whether the divorce court had ordered

the husband/debtor to pay maintenance, and thus whether his obligations

were nondischargeable under 11 U.S.C. § 523(a)(5). The court ruled for the

debtor. Pertinently, it reasoned that "the labels in the divorce decree are not

determinative of the nature of the award." 22 B.R. at 330 (citing *In re Warner*, 5

B.R. 434 (Bankr. D. Utah 1980); *In re Carrigg*, 14 B.R. 658 (Bankr. D.S.C.

1981)).

Here, even though Debtor was awarded an "equalization payment," the

judgment of divorce conditioned the payment on the refinancing of the

property. The judgment reads:

> Adam Nordgaard is awarded all rights, title, and interests to the
> marital residence located at N13070 Johnson Road, Fairchild,
> Wisconsin. Adam Nordgaard shall refinance and completely release
> Jennifer Nordgaard from all responsibility on the mortgage to the
> property within 60 days of the granting of the judgment of divorce.

The court awarded Mr. Nordgaard the homestead but, in the same

breath, ordered him to refinance it. The divorce court also required that Debtor

be removed from liability on the property and receive payment for her interest.

She has expressed that it was her intent to buy a new homestead with the proceeds of the refinance. *See* Wis. Stat. § 815.20(1) (exemption extends to "proceeds derived from the sale to an amount not exceeding $75,000, while held, *with the intention to procure another homestead with the proceeds*" (emphasis added)).

The Trustee's argument that the exemption doesn't apply because it was a refinance and not a sale is specious. This Court will not endorse the form of the transaction over its substance considering the state Constitution's mandate to apply the exemption liberally. And allowing Debtor to claim the exemption doesn't violate the principle that a person can only have one homestead at a time. *See Moore*, 179 Wis. 2d at 458. Debtor is looking to procure a homestead for herself and her children using the funds that she is rightfully entitled to. This Court won't step in the way simply because the funds came from a refinancing rather than a sale.

Since Mr. Nordgaard didn't timely refinance, he was not entitled to the property, and Debtor rightfully preserved her interest in the homestead until the refinance was carried out. Thus, she held a one-half interest in the homestead on the petition date and can properly claim the exemption.

III.    Retirement Account Exemption Under Wis. Stat. § 815.18(3)(j)

Trustee Block further argues that the Court should disallow Debtor's claim of the use of the funds awarded in the divorce under a Wisconsin retirement exemption. Wisconsin Statute section 815.18(3)(j) requires that the equalization payment be assets held or amounts payable under a retirement or

similar plan or contract. In this case, the right to the equalization payment is not held or payable in a retirement plan or similar contract.

In response, Debtor says that she expressed her intention to re-establish an IRA after she received the equalization payment.

Debtor's ex-spouse, attempting to maintain his trucking business, requested two withdrawals from her IRA in May 2015 and August 2016. She apparently agreed to the withdrawals. Because of the early withdrawals, she had to pay a tax penalty which equaled the amount of the withdrawals. This depleted the account by a total of around $68,000.

Section 815.18(3)(j) covers these assets:

> Assets held or amounts payable under any retirement, pension, disability, death benefit, stock bonus, profit sharing plan, annuity, individual retirement account, individual retirement annuity, Keogh, 401-K or similar plan or contract providing benefits by reason of age, illness, disability, death or length of service and payments made to the debtor therefrom.

To qualify for full exemption under this subsection, the retirement plan or contract must meet one of two additional requirements: (1) it must be employer sponsored; or (2) it must comply with the Internal Revenue Code. Wis. Stat. § 815.18(3)(j)(2). The statute also contains its own rule of construction: "This section shall be construed to secure its full benefit to debtors and to advance the humane purpose of preserving to debtors and their dependents the means of obtaining a livelihood, the enjoyment of property necessary to sustain life and the opportunity to avoid becoming public charges." Wis. Stat. § 815.18(1).

The Seventh Circuit analyzed this retirement account exemption in

*Cirilli v. Bronk (In re Bronk)*, 775 F.3d 871 (7th Cir. 2015). The court

explained that

> [b]y its terms, the statute requires that the retirement product
> *"provide benefits"* by reason of age, illness, death, etc., not that it be
> *"purchased"* by reason of age . . . . There is a second requirement,
> however. To qualify for full exemption as a "retirement benefit," a
> retirement product must be either employer sponsored or "compl[y]
> with the provisions of the internal revenue code." § 815.18(3)(j)(2)(a).
> . . . What it means to comply with the Internal Revenue Code is an
> important legal question not clearly answered by the text of the
> statute.
>
> One possible meaning is that the retirement product must comply
> with Internal Revenue Code §§ 401–409, which govern tax treatment
> of certain retirement plans.

775 F.3d at 878.

Even construing the statute in favor of Debtor, she cannot exempt the

equalization payment under the retirement account exemption of

section 815.18(3)(j). The funds do not fit under the umbrella of covered assets

in the exemption. The first prong, that the funds provide benefits by reason of

age, illness, disability, death, or length of service, has not been established.

The equalization payment was paid as ordered by the judgment of divorce, not

because of age, illness, disability, death, or length of service.

Second, the funds are not employer sponsored and likely do not comply

with the Internal Revenue Code's requirements relating to retirement plans.

The funds are not employer sponsored; they were largely paid from refinancing the homestead and selling equipment.[3]

Nor do the funds satisfy the requirements of the Internal Revenue Code. 26 U.S.C. § 408, for example, relates to individual retirement accounts. Section 408 defines an individual retirement account as "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries." 26 U.S.C. § 408(a). The assets in an individual retirement account cannot "be commingled with other property except in a common trust fund or common investment fund." 26 U.S.C. § 408(a)(5). Here, the proceeds from the equalization payment are not held in a trust exclusively for the Debtor's benefit; the funds are held in her counsel's law firm trust account. Thus, the equalization payment proceeds fail to qualify for the retirement exemption of Wis. Stat. § 815.18(3)(j).

## CONCLUSION

Debtor has a right to exempt up to $75,000 under Wis. Stat. § 815.20 for a homestead. The equalization payment ordered in the judgment of divorce was directed to compensate Debtor for her interest in the homestead. On the petition date Debtor held title to the property that was her homestead. She did not quitclaim her interest in the homestead until after her ex-spouse made the equalization payment. This occurred after the petition date. For these reasons,

---

[3] *See* ECF No. 38, Exh. A. Attached to the judgment of divorce is an itemized list detailing the Nordgaard's assets, and it shows that Debtor only had $8,349.39 in her 401K at the time of the divorce.

the objection to the homestead exemption is overruled and the exemption is allowed.

But Debtor cannot claim any retirement exemption under Wis. Stat. § 815.18(3)(j). The equalization payment funds cannot reasonably be construed as a retirement account. Thus, the asserted exemption for a retirement account is denied and the objection is sustained.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated:  November 29, 2023

BY THE COURT:

_____

Hon. Catherine J. Furay
U.S. Bankruptcy Judge